STATE OF MAINE

WALDO, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-99-017

DHM-WAL-8/1/2000

WILLIAM DRINKWATER,

Plaintiff

v.

CINDY BROCK,

Defendant

DECISION AND ORDER
Waldo County Superior Court

AUG 0 2 2000

REC'D AND FILED
Joyce M. Page, Clerk

This matter is before the court after bench trial. By his complaint, plaintiff seeks damages from the defendant for abuse of process, defamation, economic losses, and punitive damages. The defendant failed to appear and a default was entered by the clerk. Some five days later, defendant filed an answer to plaintiff's complaint. The matter was set for trial with notice to the defendant at her home address. Defendant failed to appear but, while the trial was in progress, she filed a letter to the court with the clerk, including attachments.

Plaintiff and defendant were married in July of 1996 after a six-month courtship. Previously, in 1988, the plaintiff had become a paraplegic and spent six months in a wheelchair, which condition continues causing various degrees of disability although he now walks with the aid of a single crutch. The parties divorced on March 29, 2000.

Shortly after their marriage, the defendant accused the plaintiff of kidnapping her son, her child of a former marriage. Later, defendant had the police remove the plaintiff from the home. This home was property of the plaintiff owned prior to the

marriage. The defendant then initiated a series of five petitions for protection from abuse. The first petition was in June of 1998. As a result of that petition, two deputy sheriffs came to the home of the plaintiff and gave him 10 minutes to leave. He wound up living in a tent. The defendant had alleged that the plaintiff had threatened her through the use of a machine gun and had constantly used threats against her with the use of two handguns. Plaintiff acknowledged that he owned two handguns which he had used when he was working in the desert many years ago. In being removed from the home, plaintiff was denied access to his own business records. He ultimately brought his own petition for protection for abuse in order to get those records. He had three court orders to obtain the records from his home but he never was successful in obtaining them. The defendant's petition for protection from abuse was denied.

Finally, as a result of the Divorce Judgment, he recovered his home. In addition, the Divorce Judgment required the defendant to leave the home in 30 days. The plaintiff had to obtain a writ of possession to reacquire sole possession. Plaintiff testified that when the defendant left, she cleaned the house out of all personal property, hers and his.

The second petition for protection from abuse filed by the defendant, like the first petition, was found to be false and not granted. The defendant alleged that the plaintiff killed a mosquito. She claimed that the plaintiff described his enjoyment in killing the mosquito and she was in fear.

The third petition for protection from abuse was brought by the defendant when she alleged that the plaintiff had mishandled his guns. During the period of time in which these acts were alleged to have taken place, the guns were in a safe in the sole and exclusive possession of the defendant. Defendant attempted to give the guns to a friend who immediately returned them. At all relevant times in this transaction, plaintiff did not have possession of the guns, the allegations were found to be false, and the petition was dismissed.

In her fourth petition for protection from abuse, she asked the court to order the plaintiff to have no contact with the defendant except in a court appearance. A contested hearing was held in Bangor, the allegations premising the petition were found to be false, and the petition was dismissed.

During the pendency of the divorce, the defendant brought a fifth petition for protection from abuse all relating to divorce issues. Defendant claimed that she was abused through the plaintiff's use of interrogatories. This petition, too, was found to be without merit when defendant failed to appear for the hearing on the petition.

During the period of all of these petitions, the plaintiff was a technology coordinator for Maine School Administrative District No. 34. In June of 1999, he was told by his supervisor that he probably would be able to be retained for summer employment to complete his projects. Subsequently, the superintendent was told about the charges under the then pending protection from abuse petition and the plaintiff was not hired for the summer and was effectively laid off from his job. As a result of all of these activities by the defendant and their consequences, the

plaintiff has had mental health counseling by a psychotherapist at the direction of the school department. After four petitions for protection from abuse, the school department indicated they were very concerned. As a result, the plaintiff went on medication, including Zoloft, for depression, Zanacs as a tranquilizer, and Busbart, an anti-anxiety medication.

Throughout this period of time, the defendant continued to call the sheriff's office in Waldo and Penobscot Counties complaining of abuse by the plaintiff. In January, his home in Belmont burned to the ground under suspicious circumstances. Plaintiff was never able to establish responsibility for the fire. At about that time, plaintiff received a call from the Penobscot Sheriff's Office at 4:00 o'clock in the morning. He was told by the officer that the defendant had called him alleging that he, the plaintiff, was in Glenburn, outside of her then residence, and that plaintiff was harassing her. According to her report, this activity by the plaintiff was occurring at the same time that the Sheriff's Office was talking with plaintiff at his parent's home in Belmont. Plaintiff testified that, not only was he not in Glenburn at the date and time in question, he has never been in the town of Glenburn.

Plaintiff testified that he has lost $3,200 in lost wages for the five and a half weeks he could not work in 1998. Plaintiff further testified as to his mental anguish suffered in the past and continuing to be of concern.

4

At the divorce, the defendant received $2,500 in cash, all the marital property, and $4,000 of the plaintiff's property. She also received $210 in cash and plaintiff's father's tools. The defendant received one-half of the premises at a value of $2,000.

During the course of plaintiff's relationship with defendant, she has worked in a number of capacities. Defendant has been employed in sales, she worked for 19 months for MBNA and also for MetLife. Plaintiff presented evidence of compliments from both employers for her work. Plaintiff testified that he believed that defendant earned $10 per hour when she worked for MBNA with an annual salary of about $21,000 a year. Plaintiff also presented evidence that defendant had resigned from the MetLife job because she felt success was out of her reach. Defendant holds a bachelor's degree in business administration from the University of Massachusetts, has held a license as an independent insurance agent, and prior to marriage was employed by a publisher in Chicago. In the past, defendant has undergone a great deal of mental health counseling.

Plaintiff has also presented a witness who is a self-employed person living in Belfast. This witness testified he knows both the plaintiff and the defendant and considers himself a friend of the plaintiff. On a date not specified, the witness testified he was in a self-service copy shop in Belfast. The defendant was present and they exchanged greetings. The defendant then entered into a five minute monologue accusing the plaintiff of undertaking all sorts of abusive acts. She did this in a very loud manner with other persons in the shop obviously in a position to hear and in the presence of her son who appeared shocked at the statements.

5

Defendant talked about the serious difficulties she was having, that plaintiff was threatening serious harm to her, and that she had obtained petitions for protection from abuse. She continued to repeat her allegations. It was the witness's perception that defendant was trying to convince the listeners in the copy shop to turn against the plaintiff. The witness said the statements were extremely defamatory.

Plaintiff is asking for $3,200 in special damages, compensation for his mental anguish, punitive damages, and attorney's fees. Plaintiff presented exhibits, including the documents associated with the five petitions for protection from abuse. The exhibits indicate that the first petition filed in Belfast District Court on June 4, 1998, was denied on July 10, 1998, after hearing where the court wrote, "Plaintiff failed to prove defendant abused plaintiff." The second complaint was filed July 24, 1998, and was denied out of hand. The court indicating, "This is simply a request for a rehearing on the last complaint which was dismissed." The third is a case file received from the Rockland District Court consisting of complaint with denial. "This conduct was alleged in prior complaints that were dismissed after full hearing, dated 8/11/98. s/W. Anderson, J." The fourth petition brought October 20, 1998, was denied after hearing on November 3, 1998, when the court found that the, "Plaintiff is not entitled to the requested relief because the plaintiff has failed to prove that the defendant abused the plaintiff as the term abuse is defined in 19-A M.R.S.A. § 4006 or 5 M.R.S.A. § 4651(2)." This matter was in the Bangor District Court. Finally, the fifth petition in the Bangor District Court was filed January 8,

1999. The complaint was dismissed as, "The plaintiff failed to appear for the hearing on the complaint.", a docket entry of January 26, 1999.

To complete the record, defendant's letter dated and filed the date of the hearing states, "I am on disability for severe panic attacks from PTSD. I cannot be present now due to this."

Finally, plaintiff has submitted an affidavit of a Belfast attorney at the request of the court. The affidavit indicates that the attorney was retained by the plaintiff in June of 1998 in connection with the then complaint for protection from abuse filed by the defendant in the Belfast District Court. The complaint proceeded to full hearing on the merits and it was then dismissed. The attorney alleges that he expended a total of 8.2 hours of legal services at his rate of $100 per hour and that plaintiff paid him a total of $820.96 for actual attorney's fees and costs, and $50 for preparation of the affidavit in question.

This court is satisfied that plaintiff has presented sufficient evidence to meet his burden of proving that the defendant engaged in liable and slander to the damage of the plaintiff. The defendant has made false statements, she has published them to third persons, the statements contained allegations of criminal activity and were slanderous per se, and in the final analysis were not privileged. As a result of these slanderous statements, plaintiff has suffered damages including mental suffering, humiliation, embarrassment, effect upon reputation, and loss of social standing. Inasmuch as some of the statements were made while plaintiff was

employed by a local public school district, malice is implied as a matter of law where the words relate to the plaintiff's profession, occupation, or official station.

At least two of defendant's petitions for protection from abuse against the plaintiff were premised upon facts identical to the first petition found by the court not to have merit. In addition, one petition was filed in a District Court of improper venue suggesting an attempt to elude the effect of the previous denials. While the use of a petition for protection from abuse cannot be considered an abuse of process upon the mere disagreement as to the conduct of the parties, the intentional filing of a petition with knowledge that a previous petition has been denied on identical facts and circumstances is a use of process for a purpose other than that for which the process exists. Therefore, it is an abuse of process.

While this court may assume that there existed legitimate differences between the plaintiff and the defendant during their marriage, the court is unable to discern some reasonable basis upon which defendant would continue to make allegations and engage in defamatory statements about the plaintiff except out of a sense of ill will and malice. Because of the nature of the statements, as well as the manner in which defendant persisted in bringing them forward, malice is specifically found as well as implied.

The entry will be:

> Judgment for the plaintiff in the amount of $3,200 for lost wages, $1,000 for attorney's fees, $10,000 for mental anguish, and $5,000 in exemplary damages.

Dated: August __/__, 2000

_____
Donald H. Marden
Justice, Superior Court

8

Date Filed __Apr. 20, 1999__ ___Waldo___      Docket No. ___CV-99-17___

County

Action __Defamation/Damages__

DONALD L. GARBRECHT
LAW LIBRARY

AUG 7

WILLIAM DRINKWATER      vs.      CINDY BROCK

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Joseph W. Baiungo, Esq.<br>10 Church St.<br>Belfast, ME 04915<br>Tel: 338-5171 | pro se<br>~~85 Misty Way~~<br>~~Glenburn, Maine 04401~~<br><br>4/21/00<br>P.O. Box 8275<br>Bangor, ME 04402-8275 |

| Date of Entry | |
|---|---|
| 4/20/99 | Complaint dtd. Apr. 1, 1999, filed.<br>Summons dtd. Apr. 9, 1999, filed showing service on Deft. on Apr. 14, 1999.<br>Complaint Summary Sheet filed. |
| 4/20/99 | Case File Notice and Pretrial Scheduling Statement to Atty. Baiungo. |
| 5/7/99 | Affidavit and Request to Clerk for entry of Default against defendant. |
| 5/7/99 | Default entered as to defendant, Cindy Brock. |
| 5/11/99 | Answer to Plaintiff's Complaint dtd. May 10, 1999, filed. |
| 5/19/99 | Atty. Baiungo and pro se deft. notified that case will proceed under new rules. |
| 5/19/99 | Scheduling Order issued. Discovery deadline is Jan. 19, 2000. (Marden, J.<br>Notice of entry and copy Order to atty. Baiungo and pro se deft. |
| 01-18-00 | Report of Conference of Counsel, filed. |
| 02/28/00 | Notice of setting for jury waived trial at April Session to atty.<br>Baiungo and to pro se deft. |
| 04/03/00 | Witness List, filed by Plff. |
| 04/18/00 | Atty. Baiungo and deft. notified by telephone of trial date of Thursday,<br>April 20, 2000 at 9:00 a.m. |
| 04/18/00 | Notice of hearing mailed to deft. and atty. Baiungo for trial on Thursday,<br>April 20, 2000 at 9:00 a.m. |
| 04/20/00 | (Marden, J.  Gould, Reporter<br>Plff. present in court with counsel, Joseph W. Baiungo.<br>Deft. does not appear.  Clerk received telephone call this morning<br>acknowedging receipt of notice.  Deft. will not appear due to medical/<br>stress related panic disorder.  Testimonial hearing held on complaint.<br>Plff's Exhibits 1,2,3,4,5 and 7 admitted.  After hearing, Court Orders<br>judgment for the plaintiff.  The amount to be determined after affidavit<br>of damages filed.  Affidavit to be filed within ten days.  Justice Marden<br>retains original file and exhibits. |